# In the United States Court of Federal Claims

No. 20-930

(Filed Under Seal: December 23, 2020)
(Reissued: December 29, 2020)

|  |  |
|---|---|
| **HWI GEAR, INC.,** ) | Post-award bid protest; procurement |
| ) | limited to qualifying small businesses; |
| Plaintiff, ) | requirement in solicitation for |
| ) | recertification of offerors' small business |
| v. ) | status upon occurrence of certain events; |
| ) | offeror's pre-award failure to recertify |
| **UNITED STATES**, ) | upon corporate change rendering offeror |
| ) | no longer small; grant of injunctive relief. |
| Defendant, ) | |
| ) | |
| **and** ) | |
| ) | |
| **MECHANIX WEAR LLC,** ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

Theodore Watson, Watson & Associates LLC, Denver, Colorado for plaintiff HWI Gear, Inc. With him on briefs was Wojciech Z. Kornacki, Watson & Associates, Washington, D.C.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the United States. With him on briefs were Scott G. Stewart, Deputy Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

H. Boyd Greene, Kirkland & Ellis LLP, Washington, D.C. for defendant-intervenor Mechanix Wear, LLC.

**OPINION AND ORDER**[1]

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review this opinion and to submit proposed redactions of any confidential or trade secret material. The parties proposed redactions, and the court accepted those relating to price. The resulting redactions are shown by asterisks enclosed by brackets, e.g., "[***]."

LETTOW, Senior Judge.

This bid protest concerns the Defense Logistics Agency's ("DLA" or "the agency") decision to award a contract for the production of capacitive gloves to defendant-intervenor Mechanix Wear, LLC ("Mechanix"). Plaintiff HWI Gear, Inc. ("HWI") challenges DLA's award as unreasonable and arbitrary, specifically arguing that the agency did not properly apply the best value tradeoff analysis and failed to follow its own solicitation criteria. The court agrees with HWI that, by failing to inquire as to Mechanix's status as a small business after Mechanix gave pre-award notice of its change in corporate structure, when Mechanix in fact became other than small, DLA failed to follow the terms of the solicitation. Therefore, HWI's motion for judgment on the administrative record is GRANTED.

## BACKGROUND[2]

### *A. Solicitation*

DLA published solicitation number SPE1C1-18-0093, seeking offers for the manufacture and delivery of Army capacitive combat gloves. AR 2-9.[3] An advantage of the gloves is that they can be used with touchscreens. *See Mechanix Wear, Inc.* B-416704.3, 2019 WL 2052703, at *1 (Comp. Gen. May 6, 2019). The contract was for a one-year base period and three, one-year option periods. AR 1-5. The agency's acquisition plan estimated production requirements to be 200,000 gloves for the first year of the contract and 210,000 gloves each year for the three option years. AR 1-5.[4] The agency estimated the cost per unit to be $42.15 for the base year with an average inflation rate of 2.26 percent for the subsequent option years, resulting in an estimated cost of $36,200,400 over the course of the contract. AR 1-5.

The solicitation was issued as a 100 percent small business set-aside. AR 1-5. Offerors needed to certify that they qualified as a small business pursuant to 13 C.F.R. part 121. AR 4-66. The solicitation incorporated several related provisions from the Federal Acquisition Regulation ("FAR"), and it included the language of FAR 52.219-28 rather than merely citing that provision or incorporating it by reference. AR 4-65 to 66. The relevant text stated that a contractor who represents itself as small prior to contract award "shall rerepresent its size status . . . [w]ithin 30 days after a merger or acquisition that does not require a novation." FAR 52.219-28(b). The

---

[2] The recitations that follow constitute findings of fact by the court from the administrative record of the procurement filed pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3] The administrative record will be cited as "AR Tab-Page Number."

[4] The specifications required that the leather used in the gloves be made from goat and kidskin, *i.e.*, leather commonly made from the skin of young goats. The process involves flaying the skins before brining and salting, pickling, and tanning them. *See Mechanix Wear, Inc.*, 2019 WL 2052703, at *2.

solicitation incorporated the language of FAR 52.219-28(b) within "Section I – Contract Clauses." AR 4-66.

The solicitation stated that the procurement decision would be evaluated according to a "Best Value Trade-Off." AR 3-17. In addition to price, the agency would consider two other factors: (1) product demonstration models and technical risk; and (2) past performance confidence assessment. AR 3-17 to 18. The technical factor included three aspects, all of "equal importance"—manufacturing operations, visual requirements, and dimensional requirements—and required offerors to submit a product demonstration model that complied with a variety of specifications. AR 3-17, 19. The past performance factor considered the recency, relevancy, and quality of past performance equally in determining a rating. AR 3-18, 20 to 22. Quality of past performance included both the quality of item and delivery performance. AR 3-18. The solicitation stated that "[a]ll evaluation factors other than cost or price, when combined, [were] significantly more important than cost or price." AR 3-23. The technical factor was the "most important evaluation factor." AR 3-23.

### B. Pre-Award Challenges

Mechanix filed two pre-award challenges to the solicitation at the Government Accountability Office ("GAO"). The original solicitation stated that tanning and processing of the goat/kidskin must occur in the United States, although pickled-state goat/kidskin could originate from foreign sources. AR 4-98. When DLA issued its first amendment, however, it replaced this criterion with the following requirement, "[a]ll Goat/Kidskin 'MUST' be 100% Domestic to include all tanning process." AR 4-98. Mechanix challenged this criterion at GAO, arguing that requiring all acquisition and processing to occur in the United States did not comply with the Berry Amendment. *Mechanix Wear, Inc.*, B-416704, 2018 WL 6242627, at *1 (Comp. Gen. Nov. 19, 2018).[5] The GAO sustained the protest, finding that goat/kidskin fit within an exception of the Berry Amendment and that agency had not "establish[ed] the reasonableness of its need for the restriction." *Id*.

In response, the agency issued an amendment allowing foreign-sourced goat/kidskin to be used "in a pickled state" but required "all tanning and processing of the goat/kidskin . . . [to] be done domestically." AR 4-115 (emphasis removed). Mechanix filed a second protest with GAO arguing that the amended restriction was still "unreasonable and contrary to the Berry Amendment." *Mechanix Wear, Inc.*, 2019 WL 2052703, at *3. GAO found "the agency's interpretation . . . reasonable" and denied the protest. *Id.* at *5-6. Therefore, the restriction remained a requirement of the final version of the solicitation.

---

[5] The Berry Amendment generally restricts the Department of Defense's expenditure of funds for certain articles and items, including clothing and hardware, to domestically produced products. *See* 10 U.S.C. § 2533a(a)-(b).

### C. Offers

The agency received offers from six bidders designated as small business concerns, including Mechanix and HWI. AR 35-652.[6] Mechanix's offer was submitted on August 29, 2018, AR 7-222, and HWI's offer was submitted on August 6, 2018, AR 5-132. The agency engaged in three rounds of negotiations with bidders, during which the bidders could address agency concerns and revise price as appropriate. AR 35-653. After the third round of negotiations, Mechanix's offer included a price of [***] for the four-year contract period while HWI offered a price of [***]. AR 35-657.[7] For the product demonstration models, Mechanix was given an overall rating of good with six weakness assessed, and HWI was awarded an overall rating of outstanding. AR 35-652 to 653. Both bidders received a rating of "satisfactory confidence" for the past performance factor. AR 35-652 to 653.[8]

### D. Mechanix's Post-Offer Notice

Following its initial offer, Mechanix became affiliated with another business in July 2019.[9] On October 22, 2019, Mechanix sent a letter to the contracting officer stating that it had changed its corporate structure. AR 45-748.[10] Specifically, the letter stated, "[t]his letter forms

---

[6] Six companies submitted offers and product demonstration models. AR 35-652. One offer was rejected because the offeror failed to submit pricing information. AR 35-652. The agency, therefore, only discussed the remaining five offers in its price-negotiation memorandum. AR 35-652.

[7] One bidder submitted a price that fell between Mechanix and HWI after the final negotiation, offering a price of [***]. AR 35-657. That bidder received a rating of good for the product demonstration model and a rating of satisfactory confidence for past performance. AR 35-657.

[8] The agency provided a comparison of the five remaining offers, including breakdowns of the rating for individual aspects of each factor in its Price Negotiation Memorandum. *See* AR 35-652 to 653.

[9] The date of affiliation was July 15, 2019. *See* Def.-Intervenor's Suppl. Br. at 2, ECF No. 42. The Small Business Administration found that Mechanix was no longer small as of that date. *Id*. For a more complete description of the effect of the affiliation, *see infra*, at 5 n. 11.

[10] As initially filed, the administrative record did not include Mechanix's letter of October 22, 2019, and the court consequently requested correction of the administrative record. *See* Order of December 10, 2020, ECF No. 46. Defendant filed a notice correcting the administrative record to add the letter on December 16, 2020. *See* Def.'s Notice Filing Corrected Administrative Record, ECF No. 47. The filing also included a copy of Mechanix's System for Award Management ("SAM") listing. *Id*. at 8-11. The government stated that it "was unable to locate [the SAM listing attachment] . . . in the administrative record" despite reference to that listing in Mechanix's letter of October 22, 2019, but it later obtained the listing directly from Mechanix. *Id*. at 1.

a part of the offer submitted by Mechanix . . . in response to Solicitation No. SPE1C1-18-R-0093 . . . . Mechanix . . . has just changed its corporate structure from a standard Corporation to a Limited Liability Corporation." AR 44-748. Mechanix indicated that its name "changed from Mechanix Wear, Inc. to Mechanix Wear LLC." AR 45-748. The letter also stated that "[a]ll other terms and conditions of the Mechanix Wear offer remain unchanged." AR 44-748. Several months later, on January 31, 2020, Mechanix submitted a letter reiterating that it "notified [the contracting officer] that Mechanix Wear had changed its corporate structure from a standard Corporation to a Limited Liability Corporation" and again providing Mechanix's new name, Mechanix Wear LLC. AR 21-480. Neither letter provides the basis for Mechanix's change in corporate structure nor does the administrative record reflect evidence that the contracting officer inquired further.

### E. DLA's Award

In April 2020, the agency determined that Mechanix represented the best value offer, and it subsequently awarded the contract to Mechanix. AR 36-695. DLA stated that "HWI's proposal [was] technically superior to Mechanix['s proposal]." AR 36-695. In evaluating their product demonstration models, DLA found that "HWI samples did not exhibit weaknesses . . . while Mechanix Wear had six (6) combined weaknesses." AR 36-695. DLA noted that Mechanix "did not have manufacturing weaknesses," and the "three (3) visual and three (3) dimensional weaknesses [were] easily correctable." AR 36-692. Additionally, DLA found that HWI was "slightly technically superior to Mechanix" on the past performance factor due to HWI's specific experience producing "army combat gloves and other similar items." AR 36-695. However, Mechanix's price was [***] less than HWI's price. AR 36-695. Despite HWI's "superior [product demonstration model] and more extensive experience," the agency found that "paying a substantial . . . premium [was] not warranted for six . . . easily correctable deficiencies and for slightly greater experience." AR 36-695. DLA notified HWI of the award to Mechanix on April 22, 2020. AR 38-700.[11]

---

[11] In the letter dated April 22, 2020, in which the Contracting Officer notified HWI that Mechanix was the apparent successful offeror, he requested no response "unless a basis arises to challenge the small business size status of [Mechanix]." AR 38-700. HWI did submit a timely protest of Mechanix's size status based on an alleged joint venture with Pyramid Case Co., Inc., and its affiliation with Gryphon Investors who bought out Mechanix, both of whom are no longer small businesses. AR 38-701. The protest was submitted to the Small Business Administration ("SBA"), which on June 3, 2020, found that Gryphon was affiliated with Mechanix after the bid submission and confirmed that Gryphon was not a small business but found that it was not affiliated when Mechanix submitted the bid. AR 40-717 to 718. The SBA also found that Pyramid was affiliated with Mechanix at the time of Mechanix's initial proposal, but that Pyramid was also small at that time. AR 40-723 to 725. The SBA determined that Mechanix was a small business for purposes of the solicitation. AR 40-725 to 726. That determination was subsequently reversed by SBA's Office of Hearings and Appeals, and the matter was remanded to SBA's area office. *See infra*.

### F. Post-Award Challenges

HWI filed a protest challenging Mechanix's size as a small business, which was referred to the Small Business Administration's ("SBA") Office of Government Contracting ("OGC"). *See* AR 40-712. Factually, following the submission of its initial proposal but prior to the award decision, Mechanix became affiliated with another company which was and is "other than small." AR 40-717 to 718. HWI argued that due to this affiliation, Mechanix was not a small business concern, and therefore was ineligible for the contract award. AR 39-701. The SBA OGC found that Mechanix was "small for solicitation SPE1C118R0093" because the appropriate time to calculate Mechanix's size was at the time of its offer prior to its change of corporate structure. AR 40-725.

HWI appealed the decision to the SBA Office of Hearings and Appeals ("OHA"), "contend[ing] that the size determination [was] clearly erroneous." *HWI Gear, Inc.*, SBA No. SIZ-6072, slip op. at *1 (Sept. 16, 2020) (included in the record as ECF No. 31-1). OHA reversed and remanded because the SBA's analysis was "incomplete or flawed." *Id.* at *9. Mechanix since has filed a petition for reconsideration before OHA. *See* Notice of Mechanix's Pet. for Recons., ECF No. 33. The administrative adjudication remains pending.

HWI filed a complaint in this court on July 30, 2020 challenging the contract award to Mechanix. Compl., ECF No. 1. HWI's two main contentions were that DLA "failed to follow its own Solicitation evaluation criteria and engaged in [an] unreasonable technical evaluation that failed to apply the best value tradeoff analysis. *Id.* at 1. The government filed the administrative record on August 14, 2020. *See* ECF No. 23. HWI subsequently moved for judgment on the administrative record. Pl.'s Mot. for J. on the Administrative R., ("Pl.'s Mot.") ECF No. 25. The government and Mechanix filed cross-motions for judgment on the administrative record. Def.-Intervenor's Resp. & Cross-Mot. for J. on the Administrative R. ("Def.-Intervenor's Cross-Mot."), ECF No. 28; Def.'s Cross-Mot. for J. on the Administrative R. & Resp. ("Def.'s Cross-Mot."), ECF No. 29. The cross-motions have been fully briefed. *See* Pl.'s Reply & Resp., ECF No. 32; Def.'s Reply, ECF No. 34; Def.-Intervenor's Reply, ECF No. 35.[12]

The court held a hearing on the cross-motions on October 20, 2020. Following the hearing, the court requested supplemental briefing from the parties "addressing the application of the small business criteria contained within 13 CFR Part 121." Order of October 21, 2020, ECF No. 36. The parties each submitted a supplemental brief pursuant to the court's order. *See* Pl.'s Suppl. Br., ECF No. 40; Def.'s Resp. to Suppl. Br., ECF No. 41; Mechanix's Resp. to Suppl. Br., ECF No. 42.

---

[12] HWI also moved to supplement the Administrative Record with the Affidavit of HWI Vice President, William Isaac Hatch. Pl.'s Mot. for Leave to Suppl. the AR, ECF No. 27. HWI contends that "[t]he administrative record does not explain or define" several key terms and "does not explain the process of manufacturing combat gloves for the U.S. Government." *Id.* at 2. The government opposes plaintiff's motion. *See* Def.'s Opp'n to Pl.'s Mot. to Suppl. the AR, ECF No. 30.

6

As described *supra*, the solicitation incorporated language from FAR 52.219-28. AR 4-65 to 66. Specifically, the solicitation stated that "[i]f the Contractor represented that it was a small business concern prior to award of this contract, the Contractor shall rerepresent its size status . . . [w]ithin 30 days after a merger or acquisition." AR 4-66. Mechanix certified as a small business concern at the time that it submitted its offer. *See* AR 8-258.[13] On October 22, 2019, Mechanix notified DLA that it had "changed its corporate structure," AR 45-748, also stating that "[a]ll other terms and conditions of the Mechanix Wear offer remain unchanged," AR 45-748. While Mechanix informed the agency of its structural change, it did not provide information regarding the reason for the change nor did the contracting officer inquire further. The parties' supplemental briefing debated whether this language imposed a recertification requirement on Mechanix, and, if so, whether the contracting officer violated the terms of the solicitation by failing to inquire as to the reason for the corporate change and the accuracy of Mechanix's representation that all other terms and conditions of its offer remained unchanged. *See* Pl.'s Suppl. Br. at 4-10; Def.'s Resp. to Suppl. Br. at 7-9; Def.-Intervenor's Resp. to Suppl. Br. at 3. All briefing has been completed, and the motions are ready for disposition.

## STANDARDS FOR DECISION

The Tucker Act vests this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's review of a protest of the government's decisions regarding the award of a contract. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1225-28 (Fed. Cir. 2004); *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014).

The court may not "substitute its judgment for that of the agency," *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrections, Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *Id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting

---

[13] In the copy of the solicitation attached to Mechanix's proposal, an "X" appears in the box indicating that "[t]he contractor represents that it . . . is . . . a small business concern." AR 8-258.

7

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In conducting the rational basis analysis, the court looks to whether the "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting *Impresa Construzioni*, 238 F.3d at 1332-33); *see also Glocoms v. United States*, 150 Fed. Cl. 258, 265, (2020) (noting the agency's broad discretion to weigh factors in a best value procurement). Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). Protests alleging a violation of regulation or procedure "must show a clear and prejudicial violation." *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333).

## ANALYSIS

Plaintiff raises various arguments related to the agency's evaluation of its offer, evaluation of Mechanix's offer, and compliance with the solicitation. However, the court does not need to reach most of these arguments because the court finds that the agency failed to comply with the solicitation requirement concerning recertification of a bidder's status as a small business. The agency was on notice of Mechanix's corporate change prior to the contract award, and, therefore, should have inquired as to whether Mechanix continued to qualify as a small business. Notably, Mechanix's representation that the terms and conditions of its offer were unchanged was in fact not correct, because the condition that Mechanix remained a small business was not true. The contracting officer's failure resulted in the agency violating its solicitation requirements. That omission was prejudicial because if the contracting officer had inquired, he would have learned that Mechanix failed to remain a small business.

### A. Small Business Certification

In its supplemental briefing, plaintiff argues first that DLA required offerors to reaffirm their small size. Pl.'s Suppl. Br. at 4-8. Mechanix, according to plaintiff, was required to recertify after its merger to determine whether Mechanix remained eligible for the contract. *Id.* at 6. When Mechanix notified the contracting officer of its change in corporate structure and represented that the terms and conditions on its offer remained in place, the contracting officer was obligated to inquire further. *Id.* at 8-10. The solicitation incorporated language originally found in FAR 52.219-28, that "[i]f the Contractor represented that it was a small business concern prior to award of this contract, the Contractor shall rerepresent its size status . . . [w]ithin 30 days after a merger or acquisition." AR 4-66.[14] Mechanix certified as a small business

---

[14] The relevant language is as follows:

(a) Definitions. As used in this clause.
. . .
Small business concern means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on

8

concern at the time that it submitted its offer. *See* AR 8-258. Generally, the company's size is determined at the time of the initial offer and that finding of size continues for the life of the contract. 13 C.F.R. § 121.404(g). But, plaintiff argues that because "the solicitation specifically requested rerepresentation within thirty days of merger," "the size status on the date of that recertification is determinative." Pl.'s Suppl. Br. at 5. It contends that here, because "DLA took the initiative to insert th[e] clause," the solicitation included a requirement for an offeror to "re-represent [its] status." Hr'g Tr. 29:9-14 (Oct. 20, 2020).

In response, defendant contends that plaintiff's recertification argument is a "repackaged . . . size protest" which plaintiff is not able to bring before this court, as it did not raise this argument during the SBA adjudication. Def.'s Resp. to Suppl. Br. at 5-7. Defendant further argues that because "FAR 52.219-28 does not apply to offers submitted during the bidding process," there was no requirement for Mechanix to recertify itself as a small business following the merger. *Id.* at 8. In support of their argument, defendant and Mechanix cite the location of the inserted language in the solicitation, the use of the word "contractor," and the title of the section in which the clause appears. *See id.* at 8-9; Def.-Intervenor's Resp. to Suppl. Br. at 4-5.

Defendants are correct that there is not ordinarily a requirement for recertification and that size is typically determined at the time that the offer is submitted. *See* 13 C.F.R. § 121.404(g). The SBA has repeatedly rejected the argument that "merely setting the task order aside for small businesses is a request for recertification." *See, e.g., Safety & Ecology Corp.,*

---

> Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and the size standard in paragraph (c) of this clause.
>
> . . .
>
> (b) If the Contractor represented that it was a small business concern prior to award of this contract, *the Contractor shall rerepresent its size status* according to paragraph (e) of this clause or, if applicable, paragraph (g) of this clause, upon the occurrence of any of the following:
>
> . . .
>
> > (2) *Within 30 days after a merger or acquisition* that does not require a novation or within 30 days after modification of the contract to include this clause, if the merger or acquisition occurred prior to inclusion of this clause in the contract.
>
> . . .
>
> (g) If the Contractor does not have representations and certifications in SAM, or does not have a representation in SAM for the NAICS code applicable to this contract, the Contractor is required to complete the following rerepresentation and submit it to the contracting office, along with the contract number and the date on which the rerepresentation was completed:
>
> The Contractor represents that it [ ] is, [ ] is not a small business concern under NAICS Code **315990** assigned to contract number.
> [Contractor to sign and date and insert authorized signer's name and title].

AR 4-66 (emphasis added).

SBA No. SIZ-5177, 2010 WL 6576189, at *23 (Dec. 20, 2010).  The court concurs with the government and Mechanix that the regulations themselves do not contain an independent requirement for an offeror to recertify, nor would FAR 52.219-28 require recertification by reference alone.  However, the concern in this case is not with the FAR requirement as it exists in the regulations, but rather with the explicit incorporation of the pertinent mandate into the solicitation.  Offerors must comply with the requirements of the solicitation, and the agency must manage the procurement in accordance with its own solicitation.  The agency in this case specifically chose to include the language from FAR 52.219-28 directly in the solicitation.  This incorporation imbues the solicitation with the recertification requirement.  *See Metters Indus., Inc. v. United States*, 109 Fed. Cl. 444, 447 (2013); *see also* 13 C.F.R. § 121.404(g).  Though the agency did not need to include the clause in the contract, after it did so, the agency must enforce the requirement.

Defendant and defendant-intervenor raise several reasons why the court should interpret the incorporated language as applying only after the contract award.  Def.'s Resp. to Suppl. Br. at 8-9; Def.-Intervenor's Resp. to Suppl. Br. at 4-5.  These arguments are not persuasive.  Neither the inclusion of the provision in "Section I – Contract Clauses" nor the use of the term "contractor" indicates that the language only applies post-award.  Notably, Section I includes requirements applicable to both offerors and contractors as well as instances where the words contractor and offeror are used interchangeably.  *See* AR 4-62 ("The *Offeror* represents . . . ." (emphasis added)); AR 4-63 ("The *Offeror/Contractor* may request a waiver." (emphasis added)); AR 4-67 ("The *offeror* must list . . . ." (emphasis added)).  Further evidence that the clause was intended to apply to offerors comes from Mechanix's own offer submission.  In the copy of the solicitation attached to Mechanix's offer, Mechanix placed an "X" in the box indicating that "[t]he Contractor represents that it . . . is . . . a small business concern . . . ."  AR 8-258.  This certification occurred on August 29, 2018.  *See* AR 7-222.

The court also takes into account the fact that Mechanix's notice, provided after the initial offer was submitted but before award, erred in representing that the terms and conditions of its offer were unchanged.  The conditions had been modified by its merger and it was no longer a small business.[15]  That circumstance was material to DLA's consideration of Mechanix's offer.

This circumstance is distinct from cases cited by defendants.  While the SBA in *Delmock Technologies, Inc.* cited the fact that the solicitation did not "contain unusual language beyond standard FAR clauses" to support the denial of the appellant's size challenge, that challenge concerned FAR 52.212-3 which did not specifically call for recertification of size status, SBA No. SIZ-5937, 2018 WL 5982022 (July 10, 2018).  Contrastingly, here the contracting officer specifically requested responses during the negotiation process, and, in the series of letters Mechanix repeatedly stated that its statements were "part of the offer" and that, with the exception of its change in corporate structure, "[a]ll other terms and conditions remain unchanged."  *See* AR 21-480 to 482; AR 45-748.  Therefore, this case more closely resembles that situation in *Metters Indus., Inc. v. United States*, 109 Fed. Cl. 444 (2013).  The terms of the

---

[15] Indeed, Mechanix in its letter did not mention "merger," but instead stated it had "changed its corporate structure."  AR 45-748.  That was true but was less than fully descriptive.

solicitation, as determined by the contracting officer, required recertification within thirty days of a merger. *See* AR 4-66. The contracting officer was on notice of Mechanix's corporate change, through direct communication from Mechanix, no later than October 22, 2019. AR 45-748. The letter did not provide the reason for corporate change, although the later SBA adjudication determined that it was due to a merger with another business entity. *See HWI Gear, Inc.*, SBA No. SIZ-6072, at 4. The contracting officer should have inquired into the reason for Mechanix's corporate change. The government has provided no explanation as to why it failed to conduct this inquiry despite the solicitation requirement and why it made an award to a large business despite the small-business restriction.

It is important to note the limited scope of this decision. The court is not determining Mechanix's size at the time it made its initial offer. That issue is subject to ongoing administrative review by SBA. *See generally* HWI Gear, Inc., SBA No. SIZ-6072. The court is simply stating that the solicitation, by its very language, required Mechanix to recertify that it was a small business within thirty days of its merger. AR 4-66. It did not do so. Once, the contracting officer was alerted to Mechanix's corporate change, the contracting officer should have, at minimum, inquired further in an effort to ensure that Mechanix was complying with the solicitation requirements. Because no inquiry occurred and Mechanix no longer qualified, the agency failed to comply with the terms of its solicitation.

Defendant and intervenor further argue that HWI cannot show that the agency's failure to act prejudiced HWI. Def.'s Suppl. Br. at 9-10; Def.-Intervenor's Resp. to Suppl. Br. at 7-8.[16] According to defendants, even if the agency violated the terms of the solicitation, plaintiff cannot show it that it had a "substantial chance" of receiving the award. Def.'s Resp. to Suppl. Br. at 10 (quoting *Emery Worldwide Airlines, Inc. v. United States*, 264 F. 3d 1071, 1086 (Fed. Cir. 2001)). However, if the agency had complied with the solicitation and determined that Mechanix was no longer a small business concern prior to award, the agency could have selected HWI as the awardee. DLA found HWI superior to Mechanix for both technical capability and past performance. AR 36-695. In this scenario, the agency could have determined that HWI was the best value for the government. HWI has made a sufficient showing of prejudice. Therefore, because the agency failed to comply with its own solicitation in manner that prejudiced HWI, the award to Mechanix is invalid.

### B. Plaintiff's Other Arguments

Plaintiff also raises six arguments related to the evaluation of the offers and issuance of the award. Specifically, Plaintiff argues that the agency (1) conducted an improper cost realism analysis, (2) failed to evaluate awardee's proposal for unbalanced pricing, (3) conducted a lowest-price technically acceptable evaluation rather than a best value assessment, (4) failed to

---

[16] Both seemingly suggest that the only consequence of Mechanix's change in its qualifications should be that DLA cannot count the award to Mechanix as a contribution to its small business procurement goals. *See* Hr'g Tr. 27:3-13 (Oct. 20, 2020) ("With respect to 52.219-28, the [g]overnment . . . revised and required recertification to show that agencies could no longer claim that dollars spent on a company after it had become a large business by virtue of a transaction could be counted towards agency small business goals.").

11

consider HWI's superior technical rating, (5) failed to consider the risk of non-domestic commodities in Mechanix's proposal, and (6) made an unreasonable best value trade-off analysis. *See* Pl.'s Mot. Defendant and defendant-intervenor argue that the agency complied with the solicitation and that the court should uphold the contracting officer's discretion in determining the best value procurement. *See* Def.'s Cross-Mot.; Def.-Intervenor's Cross-Mot. However, because the court finds that the agency failed to comply with the solicitation regarding the small business recertification, the court does not need to reach plaintiff's additional arguments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the administrative record is GRANTED and defendant and Mechanix's motions for judgment on the administrative record are DENIED. As such, the contract award to Mechanix is declared invalid and is SET ASIDE.

The Clerk shall enter judgment in accord with this disposition.[17]

No Costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[17] HWI's motion to supplement the Administrative record is DENIED. Other materials properly accessible by the court, including GAO's prior decisions, fill the gap HWI pointed out.